UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


TINA M. DEFORGE,                    )
                    Plaintiff     )
                                    )
                                    )
           v.                       )          Civil Action No. 09-30173-MAP
                                    )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social              )
Security Administration,            )
                    Defendant    )


REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S
MOTION TO REVERSE OR REMAND and DEFENDANT'S MOTION TO AFFIRM
THE DECISION OF THE COMMISSIONER (Document Nos. 13 and 16)
August 2, 2010

NEIMAN, U.S.M.J.

       This is an action for judicial review of a final decision by the Commissioner of the

Social Security Administration ("Commissioner") regarding an individual's entitlement to

Social Security Disability Insurance ("SSDI") benefits and Supplemental Security

Income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1381(c)(3).  Tina Deforge

("Plaintiff") asserts that the Commissioner's decision denying her such benefits --

memorialized in a May 8, 2009 decision of an administrative law judge -- is in error.

She has filed a motion to reverse or remand and the Commissioner, in turn, has moved

to affirm.

       The parties' motions have been referred to this court for a report and

recommendation.  *See* 28 U.S.C. § 636(b)(1)(B).  For the following reasons, the court

will recommend that Plaintiff's motion to reverse or remand be denied and that the

Commissioner's motion to affirm be allowed.

## I.  STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in

substantial evidence.  *See* 42 U.S.C. §§ 405(g) and 1383(c)(3).  Substantial evidence is

such relevant evidence as a reasonable mind accepts as adequate to support a

conclusion.  *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.

1981).  The Supreme Court has defined substantial evidence as "more than a mere

scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Thus, even if the

administrative record could support multiple conclusions, a court must uphold the

Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as

a whole, could accept it as adequate to support his conclusion."  *Ortiz v. Sec'y of Health

& Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation

marks omitted).

The resolution of conflicts in evidence and the determination of credibility are for

the Commissioner, not for doctors or the courts.  *Rodriguez*, 647 F.2d at 222;

*Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987).  A

denial of benefits, however, will not be upheld if there has been an error of law in the

evaluation of a particular claim.  *See Manso-Pizarro v. Sec'y of Health & Human Servs.*,

76 F.3d 15, 16 (1st Cir. 1996).  In the end, the court maintains the power, in appropriate

circumstances, "to enter . . . a judgment affirming, modifying, or reversing the

[Commissioner's] decision" or to "remand [ ] the cause for a rehearing."  42 U.S.C. §

405(g).

## II. BACKGROUND

Plaintiff, born in 1966, has an eleventh-grade education and worked in construction as an installer and finisher of drywall. She stopped working in 2006 or 2007 due to back, neck, and shoulder pain. (A.R. at 9.) On June 6, 2007, Plaintiff applied for SSDI and SSI benefits alleging that she had been disabled since May 2, 2006. Although Plaintiff's application mentioned only "physical" impairments, the court will describe her most recently asserted mental impairments as well.

A. Physical Issues

Plaintiff first sought treatment for back pain in 2005 when she visited the emergency room at Franklin Medical Center ("FMC"). (A.R. at 245-48, 258-64.) Although x-rays were negative, she received physical therapy from June to November of 2005. (A.R. 210-27, 232-36.) Plaintiff's condition generally improved but, in February of 2006, she was treated at Pioneer Spine and Sports Physicians ("PSSP"), where Dr. Brett Hynninen found her to be in mild distress and recommended prednisone and physical therapy. (A.R. at 281-84, 313.) On March 27, 2006, Plaintiff had a trigger point injection to reduce pain at the recommendation of Karl Fuller, a  physician's assistant. (*Id.*)

Plaintiff again visited the emergency room on May 26, 2006, where she was diagnosed with back strain and discharged with a prescription for Vicodin. (A.R. at 256-57.) In August she was diagnosed with chronic low back pain and myofacial pain of the right upper back at the Greenfield Health Center ("GHC"). (A.R. at 302-05.) She was again prescribed Vicodin by Dr. Jeffrey Palmer. (*Id.*) The following month, she was

3

found to have limited flexion and extension of as well as spasms in her back, although

she was not in acute distress.  (A.R. at 299-300.)

Plaintiff returned to PSSP in October of 2006 where Mr. Fuller found significantly

restricted lumbar flexion and low back and buttocks pain.  (A.R. at 279.)  However,

Plaintiff's gait was smooth, she had only mild discomfort moving from a sitting to a

standing position, her strength was five out of five, and her sensation was intact.  (*Id.*)

Mr. Fuller scheduled an MRI and discussed treatment options including steroid and

facet injections.  (*Id.*)

On November 25, 2006, Plaintiff was treated at the FMC emergency room for

back pain radiating down her leg.  (A.R. at 249-52.)  A Dr. Blancher found tenderness at

the left paralumbar area, although the examination was otherwise normal; Dr. Blancher

prescribed Vicodin and Ativan and advised Plaintiff to take Ibuprofin.  (*Id.*)  Two days

later Plaintiff obtained prescriptions for Percocet and Atavan.  (A.R. at 298.)

On December 21, 2006, Mr. Fuller at PSSP noted that an October MRI revealed

no evidence of lumbar degernative disease, disc herniations, or neural narrowing.  (A.R.

at 297.)  He did note sacroiliac and lumbar strain and recommended cortisone

injections, but declined Plaintiff's request for renewal of her Percocet prescription.  (*Id.*)

Two days later, Plaintiff visited GHC seeking treatment for back pain and reporting that

her medications had run out.  (A.R. at 296.)  Dr. Patricia Iverson noted that Plaintiff was

using "lots of narcotics and [was] noncompliant with recommendations for other

treatment modalities."  (*Id.*)

In January of 2007, Plaintiff received an injection to her right sacroiliac joint but

reported to Dr. Sara Rourke of GHC that it had not helped.  (A.R. at 294.)  Examinations

over the next two months revealed little change  (A.R. at 273-78, 285), but physical therapy in January and February, including use of a "TENS" unit, helped decrease the pain (A.R. at 229-31).  In April, Plaintiff again reported relief from use of the TENS unit. (*Id.*)

That same month Plaintiff returned to GHC where Nurse Practitioner Robin Ralicki prescribed methadone for her chronic back pain.  (A.R. at 289-91.)  Plaintiff soon reported that she was feeling "great," her pain was "gone," and she was "glad to have her life back."  (*Id.*)  On May 23, 2007, however, Dr. Paul Carlan reduced the methadone dosage because Plaintiff reported that she felt "drunk."  (A.R. at 287-88.)  In June, Plaintiff indicated that she was still moving well but was experiencing gastric discomfort, attributing this to Percocet, and she was switched to Vicodin.  (*Id.*) Meanwhile, Plaintiff continued physical therapy but was discharged that same June. (A.R. at 200, 209.)  On July 2, 2007, Plaintiff reported frustration with her need for medication but was pleased with the relief provided.  (A.R. at 316.)

On January 31, 2008, Plaintiff saw Ms. Ralicki at GHC for a physical exam.  (A.R. at 314-15.)  Plaintiff was found to be alert and oriented and to have no psychomotor, mood, affect, speech, or thought impairments.  (*Id.*)  Ms. Ralicki's later progress note in July indicated that Plaintiff tested positive for cocaine although she denied such use. (A.R. at 344.)

B.  Mental Issues

Because Plaintiff now alleges that she also suffers from a mental impairment, the court has scoured the administrative record with respect to any limitations caused by such impairments.  The record indicates that, in 2006, Plaintiff was trying anti-

depressants but later refusing to use them. (A.R. at 301.) Also, in undated and unsigned Disability Reports, Plaintiff claimed that she needed reminders to do daily self-care and had suicidal thoughts. (A.R. at 175, 182.) Similarly, in a Function Report dated December 26, 2007, Plaintiff claimed to require reminders to do basic things like turning off the water and closing the refrigerator door. (A.R. at 192.)

On November 20, 2008, Plaintiff reported to Ms. Ralicki, the nurse practitioner at GHC, that her "lawyer should be calling, they want her to be on an antidepressant and see a therapist." (A.R. at 332.) Ms. Ralicki diagnosed Plaintiff at the time with anxiety and depressive disorder. (*Id.*) GHC records dated December 18, 2008, indicate that Plaintiff had been taking the anti-depressant Celexa but had no appetite and would like to try Paxil instead. (A.R. at 330.)

C. Procedural History

On May 3, 2007, in the midst of these medical benchmarks, Plaintiff filed her application alleging that she had been disabled since May 2, 2006, due to a back injury, pinched nerves in her neck, and leg and hip pain. (A.R. at 113-121, 142.) Plaintiff's claim was denied initially and, thereafter, by federal reviewing official, whereupon she was granted a hearing before an administrative law judge to be held on March 24, 2009. (A.R. at 53-67.)

In the meantime, on August 24, 2007, a non-examining physician, Dr. Douglass Poirier, reviewed Plaintiff's records and completed a Residual Functional Capacity Assessment. (A.R. at 319-26.) He determined that Plaintiff could frequently lift ten pounds, occasionally lift twenty pounds, and sit and stand or walk for about six hours each in an eight-hour day. (*Id.*) He also concluded that Plaintiff could only occasionally

stoop and was limited to occasional overhead work.  (*Id.*)  On September 19, 2007, a

second reviewing physician, Dr. Jessica Tinianow, agreed with the Dr. Poirier's

assessment.  (A.R. at 328-29.)

On the morning of the administrative hearing, March 24, 2009, Ms. Ralicki, the

nurse-practitioner at GHC, completed and faxed to Plaintiff a Mental Residual

Functional Capacity Assessment ("MRFC") in which she indicated that Plaintiff was

"markedly" limited in her ability to maintain concentration for extended periods as well

as in several similar areas as well.  (A.R. at 336-37.)  The administrative law judge

(hereinafter "the ALJ") accepted the report and proceeded with the hearing at which

Plaintiff, her boyfriend, and a vocational expert testified.  (A.R. at 14-35.)

In response to a hypothetical question from the ALJ, the vocational expert

testified that an individual of Plaintiff's age and background -- who was limited to light

work and who had the restrictions listed by Dr. Poirier (limited overhead reaching,

limited stooping,) -- could not perform Plaintiff's past relevant work but could perform a

variety of other jobs present in significant numbers in the national and local economies.

(A.R. at 47-49.)  In response to a second hypothetical -- which included some of the

limitations listed in Ms. Ralicki's report -- the vocational expert testified that a person so

limited would not be employable.

In a decision dated May 8, 2009, the ALJ found that Plaintiff was not disabled.

(A.R. at 7-12.)  The Decision Review Board affirmed the decision, rendering it final and

subject to judicial review.  (A.R. at 1-3.)

### III.  DISCUSSION

An individual is entitled to SSDI benefits if, among other things, she has an

insured status and, prior to its expiration, is under a disability.  *See* 42 U.S.C. §

423(a)(1)(A) and (D).  Entitlement to SSI, on the other hand, requires a showing of both

disability and financial need.  *See* 42 U.S.C. § 1381a.  Plaintiff's need, for purposes of

SSI, and her insured status, for purposes of SSDI, are not challenged.

A.  Disability Standard and the ALJ's Decision

The Social Security Act (the "Act") defines disability, in part, as the "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which . . . can be expected to last for a continuous period

of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  *See also* 42 U.S.C. §

1382c(a)(3)(A) (similar).  An individual is considered disabled under the Act

> only if [her] physical and mental impairment or impairments
> are of such severity that [s]he is not only unable to do [her]
> previous work but cannot, considering [her] age, education,
> and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate
> area in which [s]he lives, or whether a specific job vacancy
> exists for [her], or whether [s]he would be hired if [s]he
> applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  *See generally Bowen v. Yuckert*, 482

U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol

described by the First Circuit as follows:

> First, is the claimant currently employed?  If [s]he is, the
> claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment?  A
> "severe impairment" means an impairment "which
> significantly limits the claimant's physical or mental capacity

to perform basic work-related functions."  If [s]he does not
have an impairment of at least this degree of severity, [s]he
is automatically not disabled.

Third, does the claimant have an impairment equivalent to a
specific list of impairments in the regulations' Appendix 1?  If
the claimant has an impairment of so serious a degree of
severity, the claimant is automatically found disabled.

. . . .

Fourth . . . does the claimant's impairment prevent [her] from
performing work of the sort [s]he has done in the past?  If
not, [s]he is not disabled.  If so, the agency asks the fifth
question.

Fifth, does the claimant's impairment prevent [her] from
performing other work of the sort found in the economy?  If
so [s]he is disabled; if not [s]he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982).

In the instant case, the ALJ found as follows with respect to these questions:

Plaintiff had not engaged in substantial gainful activity since the alleged onset of her

disability (question 1); she has an impairment, myofacial pain syndrome that is "severe"

but which does not meet or medically equal one of the listed impairments in Appendix 1

(questions 2 and 3); she is prevented from performing her past relevant work (question

4), but is able to perform a significant number of jobs in the national economy, including

cashier, parking lot attendant, and counter clerk (question 5).  (A.R. at 9-12.)  As a

result, the ALJ concluded that Plaintiff was not eligible for SSDI or SSI. (A.R. at 13.)

B.  Plaintiff's Challenge to the ALJ's Decision

Plaintiff makes three arguments in support of her motion to reverse or remand.

First, Plaintiff asserts that the ALJ erred by not listing her mental impairment as "severe"

under question 2 of the five-step protocol.  Second, Plaintiff asserts that the ALJ failed

to properly assess her pain as a limiting factor in her ability to work; in particular,

Plaintiff contends that the ALJ's inquiry into the six factors described in *Avery v. Sec'y of*

*Health & Human Servs.*, 797 F.2d 19 (1st Cir. 1986) (hereinafter "the *Avery* factors")

was inadequate and that the ALJ did not properly consider the relevant medical records

when evaluating her subjective complaints of pain.  Third, Plaintiff asserts that the ALJ's

determination of her residual functional capacity was unsupported by substantial

evidence in the record.

For his part, the Commissioner argues that the ALJ correctly determined that

Plaintiff does not suffer from a severe mental health impairment, that he properly

evaluated the Plaintiff's subjective complaints, and that substantial evidence of record

supported the ALJ's determination of Plaintiff's residual functional capacity.  The court

believes that the Commissioner has the stronger argument.

1.  The ALJ's Mental Impairment Severity Determination

Plaintiff first contends that the ALJ failed to apply the *de minimis* standard called

for in *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1122 (1st Cir.

1986), when determining that her alleged mental impairment was not "severe" at

question 2 of the five-step protocol.  The court disagrees.

The First Circuit in *McDonald* indicated that question 2 is intended to screen out

frivolous claims.  *Id. See also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  Still, the

First Circuit explained, a claimant always has the burden of providing medical evidence

demonstrating the severity of her condition.  *McDonald*, 795 F.2d at 1122.  *See also*

*Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001); 20 C.F.R. §§

404.1520(a)(4)(2), 416.920(a)(4)(2).  Thus, a claimant must show that her impairment

has more than a minimal effect on her ability to do basic work activities. *See Munoz v. Sec'y of Health & Human Servs.*, 788 F.2d 822, 823 (1st Cir. 1986); 20 C.F.R. §§ 404.1520(c), 416,920(c); Social Security Ruling ("SSR") 85-28.

Here, Plaintiff did not allege any mental impairment when she originally applied for benefits and, later, provided virtually no evidence of a mental impairment to the ALJ. That is reason enough to reject Plaintiff's first argument. *See Bowen*, 482 U.S. at 146. Nonetheless, in an effort to provide a comprehensive report and recommendation, the court will consider what Plaintiff now argues, namely, (1) that the administrative record contains at least some evidence of a mental impairment, particularly the report completed by Ms. Ralicki on the morning of the administrative hearing, and (2) that the ALJ improperly discounted Plaintiff's "subjective complaints" arising out of that impairment.

  a. Ms. Ralicki's Report

The only evidence in the medical record of any mental health difficulties affecting Plaintiff's ability to work was the Mental Residual Functional Capacity Assessment that Ms. Ralicki prepared the day of the administrative hearing. (A.R. at 336-37.)[1] Ms. Ralicki indicated therein that Plaintiff was "markedly" limited in her ability to maintain attention for extended periods, to understand, remember, and carry out detailed instructions, to function within a schedule and maintain regular attendance, and to complete a normal workday or workweek without interruption from psychological

---

[1] The court notes that Ms. Ralicki's opinion was formulated only after Plaintiff's lawyer indicated that she ought to "be on an antidepressant and see a therapist." (A.R. at 332.)

symptoms and without a number of lengthy rest periods.  (A.R. at 336-37.)  In the

court's view, the ALJ's decision to discount this report was proper for several reasons.

A medical opinion and assessment must come from an acceptable medical

source, usually a physician, to be considered valid evidence of a severe impairment.

*See* 20 C.F.R. §§ 404.1513(a), 416.913(a).  Here, however, the assessment came from

a nurse practitioner, not a physician, and was not entitled to the decisive weight Plaintiff

proposes.  *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *Peterson v. Astrue*, 2009

WL 1687812, at *2 (D.N.H. June 12, 2009) (noting that a nurse practitioner is not an

acceptable medical source for establishing an impairment or determining severity but

may be considered insofar as she might establish a context for opinions from

acceptable sources).

To be sure, an administrative law judge generally must "give more weight to the

opinions from [a claimant's] treating physicians, since these sources are likely to be the

medical professionals most able to provide a detailed, longitudinal picture of [the

claimant's] medical impairments."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The

opinion of a treating physician, however, typically receives controlling weight only if it "is

well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence."  *Id.*  Here, not only does the

contrary opinion come from a non-binding medical source, but it is inconsistent with

other evidence of record, thereby enabling the ALJ to "downplay" its strength.  *See*

*Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D. Mass. 2004).  In particular, Ms. Ralicki's

assessment presented quite a different picture from those of Drs. Poirier and Tinianow,

if not the other medical evidence of record as well.  For one thing, the record lacks any

indication of clinical or laboratory diagnostic techniques supporting Plaintiff's claim of a

mental impairment.  For another, Ms. Ralicki did not establish any longitudinal history

for any mental impairment, let alone a severe one.  And, while there are random notes

that Plaintiff sometimes took (or refused) anti-depressants (see, *e.g.*, A.R. at 147, 330-

33), there is no indication that this was because of any mental health impairment,

severe or otherwise.  The ALJ, accordingly, was left only with Plaintiff's subjective

complaints that she suffered from a mental impairment, an assertion to which the court

now turns.

> b.  Plaintiff's Subjective Complaints

The First Circuit has long acknowledged that an administrative law judge is not

required to take a claimant's subjective allegations at face value.  *See Bianchi v. Sec'y*

*of Health & Human Servs.*, 764 F.2d. 44, 45 (1st Cir. 1985) (citations omitted).  Rather,

the administrative law judge must consider the consistency of the claimant's testimony,

her medical treatment, and any other relevant observations.  *See* SSR 96-7p.

Generally speaking, a court must defer to credibility determinations made by the

administrative law judge.  *See Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d.

192, 195 (1st Cir. 1987); *Brown v. Sec'y of Health & Human Servs.*, 740 F. Supp. 28, 36

(D. Mass. 1990).

Here, Plaintiff's subjective complaints of a mental impairment were quite sparse.

For example, as reflected in undated and unsigned Disability Reports, Plaintiff claimed

that she needed reminders to do basic self-care activities and had suicidal thoughts, but

there is no indication that Plaintiff was ever raising the issue of her mental health.

Similarly, in a Function Report dated December 26, 2007, Plaintiff claimed to require

reminders to turn off the water and to close the refrigerator door but, again, this statement provides no assertion of mental health problems. Finally, Plaintiff's testimony before the ALJ was, at best, inconsistent; she first stated that she was having no mental health difficulties because she was on an anti-depressant but later stated that she was anxious and went for long periods without eating. Plaintiff's testimony was also contradicted by her boyfriend who testified that, while she sometimes had a reduced appetite, she had *not* gone for a period of several days without eating. In short, the ALJ had sufficient reason to cite factual inconsistencies in Plaintiff's testimony with other evidence in the record, to find that she "appeared to exaggerate her symptoms" and, in the end, to discount Plaintiff's assertions regarding the severity of her mental impairment.

    2. The ALJ's Analysis of Plaintiff's Pain Claims

Plaintiff also asserts that the ALJ failed to properly evaluate the medical evidence of her pain and her subjective complaints. In particular, Plaintiff contends that the ALJ did not sufficiently follow the protocol set forth in *Avery*. The court disagrees.

    a. *Avery* Analysis

The First Circuit requires that, in evaluating a claimant's pain, the administrative law judge must "investigate all avenues presented that relate to subjective complaints, including the claimant's prior work record and information and observations by treating and examining physicians and third parties." *Avery*, 797 F.2d at 23. In particular, the analysis involves consideration of the following factors: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side-effects of any

pain medication; (4) treatment, other than medication, for relief of pain; (5) functional

limitations; and (6) the claimant's daily activities. *Id.* at 28-29.  These factors are taken

directly from the Program Operations Manual System ("POMS") issued in 1985 for the

purpose of standardizing pain evaluation. *Id.* at 22.

Here, the court is satisfied that the record as a whole demonstrates sufficient

consideration of the *Avery* factors at the administrative hearing.  *See Cox v. Astrue*,

2009 WL 189958, at *10 (D. Mass. Jan. 16, 2009) ("Despite the lack of detail on these

issues in the written decision, the ALJ provided enough discussion of the *Avery* factors

in that decision to demonstrate the basis on which he determined [the claimant's]

credibility regarding her statements of subjective pain").  For example, both the ALJ and

Plaintiff's attorney questioned Plaintiff at the hearing regarding the nature ("sharp," A.R.

at 26), location ("lower back, shoulder, and ... neck," A.R. at 20), onset (A.R. at 19),

duration and frequency (A.R. at 34), radiation (to her legs, A.R. at 26), and intensity

(A.R. at 24-25) of her pain.  Plaintiff also testified about precipitating events, such as

falling down the stairs and gardening (A.R. at 20), as well as aggravating factors such

as drywall installation, driving, moving about, walking and climbing stairs (A.R. at 20,

23-24, 27).

In addition, the record is replete with evidence of Plaintiff's use of pain

medication, including types and dosages, so much so that the ALJ questioned whether

Plaintiff was engaged in "drug-seeking" behavior.  (A.R. at 10.)  And although Plaintiff

gave contradictory testimony about the effectiveness of the medication (A.R. at 21, 24),

she did testify about its side effects, namely, drowsiness (A.R. at 22), which the ALJ

considered.  The ALJ also questioned Plaintiff about trying physical therapy (A.R. at 21),

her functional restrictions (A.R. at 25, 29, 35, 36, 46), and her daily activities (A.R. at 29, 35, 39).  In sum, the ALJ fully explored the *Avery* factors at the administrative hearing.

Further, Plaintiff's arguments to the contrary, the ALJ's decision itself was quite detailed in its analysis of the *Avery* factors.  To be sure, there is no requirement in *Avery* that compels an administrative law judge to include a comprehensive analysis in the decision itself.  *See Avery*, 797 F.2d at 19*.*  And for its part, the POMS requires only that "the determination rationale [] contain a thorough discussion and analysis of the objective medical and nonmedical evidence, including the individual's subjective complaints and the adjudicator's personal observations," and "provide a resolution of any inconsistencies in the evidence as a whole and set forth a logical determination of the individual's capacity to work."  *Id.* at 28.  *See also Cox*, 2009 WL 189958, at *10 (the ALJ was not required to demonstrate specific consideration of each of the *Avery* factors in his decision, so long as the record as a whole shows that he considered them).  Here, the ALJ's decision in the case at bar was sufficiently comprehensive.

The ALJ noted Plaintiff's diagnostic history, medical tests and results, medications and other prescribed treatments and their results.  He also noted that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p."  (*Id.* at 10.)  In addition, the ALJ described Plaintiff's testimony of her subjective complaints, resolved contradictions between that testimony and other evidence in the medical record and the testimony of another witness, presented his observations of Plaintiff's demeanor, noted that he did not observe the shaking she claimed to

16

experience, acknowledged Dr. Poirier's assessment of her residual functional capacity, and made his own assessment.  This analysis, in the court's view, was more than adequate.

      b.  <u>Plaintiff's Credibility</u>

Plaintiff appears to assert that the ALJ's consideration of her credibility -- this time with regard to her pain -- was in error as well.  As before, however, the court finds Plaintiff's argument unpersuasive.

An administrative law judge is under no obligation to take a claimant's subjective claims at face value.  *Bianchi*, 764 F.2d at 45.  Moreover, an administrative law judge, who hears the claimant's testimony, is generally in a better position than the court to assess its credibility.  *See Brown*, 740 F. Supp. at 36.  Thus, when a claimant alleges functional limitations due to pain that exceed limitations set out in the medical record, the credibility of those allegations becomes an essential factor in the administrative law judge's analysis.  *Id.*

Here, the ALJ based his credibility determination on substantial evidence in the record.  *Compare Bazile v. Apfel*, 113 F. Supp. 2d 181, 187 (D. Mass. 2000) (finding insufficient a general finding of a lack of credibility).  For example, as described, the ALJ cited Plaintiff's contradictory testimony regarding her mental health, her claim that she did not eat for ten days, and the general lack of support for her claims in the record.  The ALJ also contrasted certain of Plaintiff's testimony, *e.g.*, that she had to lie down most of the time due to pain, with other statements that the pain was "gone" and that she was "quite happy" with the relief afforded her.  The ALJ also noted Plaintiff's demeanor and determined that, given the record as a whole, she was exaggerating her

symptoms, including the central functional limitation cited by Ms. Ralicki, *i.e.*, Plaintiff's

inability to concentrate.  In addition, the ALJ noted a recent positive drug screen for

cocaine despite Plaintiff's claims that she did not use such drugs.  Finally, the ALJ

pointed to evidence that Plaintiff had done substantial work in 2007 despite her claim

that she had not worked since 2006.  In sum, the court finds no legal or factual error in

the ALJ's credibility finding.

   3.  Substantial Evidence

Finally, Plaintiff argues generally that the ALJ's conclusion about her residual

functional capacity was not supported by substantial evidence.  Plaintiff asserts

somewhat more specifically that the ALJ failed to consider the impact of Plaintiff's

mental health, pain, and side effects of medication.  Again, the court finds Plaintiff's

argument unavailing.

Even if the administrative record might support multiple conclusions, a court must

uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the

record as a whole, could accept it as adequate to support his conclusion."  *Ortiz*, 955

F.2d 765, 769 (citation and internal quotation marks omitted).  Here, the ALJ based his

assessment of Plaintiff's residual functional capacity on the findings of Dr. Poirier, as

confirmed by Dr. Tinianow.  Dr. Poirier found Plaintiff to be restricted to light work, *i.e.*,

lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects

weighing up to ten pounds due to neck and back pain; he also determined that Plaintiff

was able to stand and/or walk for a total of six hours in an eight-hour work day, although

she was somewhat limited in reaching in all directions.  The ALJ concluded that these

limitations, when considered in conjunction with Plaintiff's age, education, and work

experience, restricted her from engaging her past work as a drywall installer and finisher but did not restrict her from certain light work.

Two of Plaintiff's assertions -- that the ALJ did not consider the impact of either her mental health impairments or pain -- have been addressed above.  Similarly, Plaintiff's assertion that the ALJ improperly discounted the side effects of her medication is unpersuasive.  In essence, there were only two brief notations in the record indicating that Plaintiff experienced some drowsiness, one by Ms. Ralicki, and only one reference to gastric discomfort.  Plaintiff, however did not complain of drowsiness when reporting the effects of her medication once her methodone was reduced; rather, she indicated that she was "glad to have her life back" and was "quite happy" with the relief afforded by her medication.  At bottom, the court believes that the ALJ's determination of Plaintiff's residual functional capacity was a reasonable conclusion based on substantial evidence in the record.

## IV.  CONCLUSION

For the reasons stated, the court recommends that Plaintiff's motion to reverse or remand be DENIED and that the Commissioner's motion to affirm be ALLOWED.[2]

---

[2]  The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir.

DATED: August 2, 2010

            /s/   Kenneth P. Neiman
            KENNETH P. NEIMAN
            U.S. Magistrate Judge

---

1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.